UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

        v.                        CASE NO. 8:06-cr-246-T-17MAP

JOHN JAIRO SATIZABAL,
JUAN SALAS-MERINA
JAIME SALAZAR-VIVA,
HEYMER ANGULO-MOSQUERA,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

The Defendants are charged with conspiracy and possession with intent to distribute five kilograms or more of cocaine while on board a stateless vessel in violation of the Maritime Drug Law Enforcement Act ("MDLEA," *see* 46 U.S.C. app. § 1901, *et seq.*). All move to dismiss the indictment contending the government cannot prove the vessel at issue was stateless and therefore subject to the jurisdiction of the United States (doc. 33).[1] In response, the government counters stating the go-fast boat bore no indicia of nationality. After an evidentiary hearing on the matter, I recommend the motion be denied.

    *A. The MDLEA*

The MDLEA makes it "unlawful for any person … on board a vessel subject to the jurisdiction of the United States … to knowingly or intentionally manufacture or distribute, or

---

[1] Defendant Angulo-Mosquera filed the motion to dismiss which the remaining Defendants adopted. The district judge referred the matter to me for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 6.03(b). *See* doc. 48.

possess with intent to manufacture or distribute, a controlled substance." 46 U.S.C. app. § 1903(b).[2] The Act defines a "vessel without nationality" as "a vessel aboard which the master or person in charge makes a claim of registry, which claim is denied by the flag nation whose registry is claimed; any vessel aboard which the master or person in charge fails, upon request of an officer of the United States empowered to enforce the applicable provisions of United States law, to make a claim of nationality or registry for that vessel; and a vessel aboard which the master or person in charge makes a claim of registry and the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality." § 1903(c)(2)(A), (B), and (C). A claim of nationality or registry only includes: "possession on board the vessel and production of documents evidencing the vessels nationality in accordance with article 5 of the 1958 Convention on the High Seas; flying its flag nation's ensign or flag; or a verbal claim of nationality or registry by the master or person in charge of the vessel." § 1903(c)(3)(A), (B), and (C). Lastly, Congress specifically noted that "all jurisdictional issues arising under this chapter are preliminary questions of law to be determined solely by the trial judge" and whether a vessel is "subject to this chapter is not an element of any offense." § 1903(f); *see also United States v. Tinoco,* 304 F.3d 1088, 1107-12 (11th Cir. 2002) (finding this provision of the Act constitutional because this jurisdictional provision is not a traditional element or otherwise an essential ingredient of a criminal offense).

   *B. Facts*

On June 12, 2006, a helicopter on routine patrol from the United States Coast Guard Cutter Alert spotted a go-fast traveling at a high rate of speed in international waters north of the Galapagos Islands. Matching the ocean's light green color and powered by four outboard engines, the speedy

---

[2] Section 1903(j) prohibits a conspiracy or attempt to do the same.

craft fit the profile of a narcotics smuggling vessel. It flew no flag, bore no markings, nor displayed any indicia of nationality. When the helicopter's crew hailed the go-fast with a loudspeaker, flashing lights, and siren, the go-fast's crew refused to comply. The crew likewise ignored warning shots across the go-fast's bow. Finally, the USCG fired two rounds into the engines disabling them in part. Unable to escape, the go-fast's crew jettisoned large bales overboard. Marking the area with a buoy, the helicopter returned to the Alert to refuel. A Customs maritime patrol aircraft (a P-3 Orion) picked up the surveillance finding the go-fast on the stern of a larger boat, the F/V Maria Jose Del Mar. Aircraft personnel spotted a crew member from the go-fast jump into the ocean and the small craft reverse course away from the larger boat. By the time the USCG's boarding party arrived on the scene, its members had already visited the debris field and picked up bales of suspected cocaine.

LTJG Antonio Donis, who was charged with conducting the right of approach to the F/V Maria Jose Del Mar, spoke to the master of the fishing vessel (Tenorio). Tenoria stated the Maria Jose Del Mar had left Buenaventura, Colombia with seven on board. The previous day, they had rescued an additional four men whose craft whose craft had sunk (Tenorio described their craft as an eleven meter canoe). When Officer Donis showed him a photograph of the go-fast taken by the USCG's helicopter crew, the master changed his story. Now he recognized the go-fast as similar to the one used by the four rescued crew members.

Officer Donis next confronted the four seamen and asked who was the master of the go-fast. Defendant Satizabal acknowledged being the master and stated they had left Guapi, Colombia. He admitted his boat was not registered, although all were Colombian. However, when Donis showed Satizabal a photograph of the go-fast, he denied that was his vessel. Donis relayed this information

to his district superiors who deemed the vessel stateless. *Id.*

*C. Discussion*

This case is really materially indistinguishable from *Tinoco* and a host of smuggling cases at the circuit (reported and unreported) and district levels applying *Tinoco's* reasoning to a challenge under the MDLEA. *Tinoco,* 304 F.3d at 1088. All, when presented with facts similar to here, found the vessels stateless and subject to the court's jurisdiction under the MDLEA. *See United States v. Martinez,* 202 F. App. 353 (11th Cir. 2006) (go-fast that flew no flag, had no name, registration number, home port, or other indicia of nationality; crew made no claims of nationality and everyone denied being master); *United States v. Estupinan,* 453 F.3d 1336 (11th Cir. 2006) (go-fast abandoned by crew and set afire; defendant conceded issue of statelessness given evidence that vessel "was without nationality" under MDLEA); *United States v. Valencia,* 169 Fed. App. 565 (11th Cir. 2006) (go-fast north of Ecuador matching the color of the sea was unmarked, had no flag, and no registration numbers; no one claimed to be the captain but stated they found the boat in Ecuador although all were from Colombia); *United States v. Rendon,* 354 F.3d 1320 (11th Cir. 2003) (go-fast without markings, registration; one of the crew claimed to be the master and said vessel registered in Colombia but Colombian authorities could not confirm); *United States v. McPhee,* 336 F.3d 1269 (11th Cir. 2003) (go-fast's master claimed vessel registered in Bahamas but Bahamian authorities did not unequivocally affirm; vessel considered stateless); *United States v. Umbacia,* 2005 WL 1424821 (M.D. Fla. June 17, 2005) (vessel bore no flag or markings of nationality; crew identified themselves as Colombian but no one made a claim of registry).[3]

---

[3] *Martinez* and *Valencia* are unreported decisions; accordingly, under 11th Cir. R. 36-2 are not to be considered binding precedent. Nevertheless, they present a consistent pattern of documented conduct and a consistent application of the law to that conduct.

In *Tinoco*, crew members claimed the government had insufficient proof that their vessel was without nationality and that the Coast Guard acted in bad faith since its officials led the Columbian Navy to believe further attempts to learn the vessel's name and registration would be futile. However, the Eleventh Circuit concluded that the Coast Guard had no duty to conduct a follow-up investigation when a thorough search of the vessel had revealed no indicia of the vessel's name or registration. Moreover, the Coast Guard had no duty to press the crew members for more information regarding the vessel's registration even when they had initially been cooperative with the Coast Guard's efforts to attain such information.

This case is not materially different. The Coast Guard personnel diligently searched what they could, albeit without a vessel, and attained what scant information they could from its purported crew. As in *Tinoco*, even if the Coast Guard had investigated further and provided more (or any) information to the claimed country of registry, there is no evidence in the record that a different result would have been reached. *Tinoco*, 304 F.3d at 1115-16. Though Defendant Satizabal acknowledged being the master of an unregistered boat that had left Guapi, Colombia, he simultaneously denied his vessel was the one chased by USCG; indeed, his claim of nationality was meaningless. *See Umbacia,* 2005 WL 1424821 at *2 (finding U.S. jurisdiction under 46 U.S.C. app. § 1903(c)(2)(B) where master or person in charge of vessel failed to make a claim of registry but identified the vessel as Columbian and holding that there is no affirmative obligation on part of Coast Guard to investigate the nationality of the vessel under such circumstances). Additionally, as in *Umbacia*, defense counsel have failed to tender any evidence supporting Defendants' assertions or inferences of Columbian registry of the vessel.

*D. Conclusion*

In short, the government has demonstrated beyond a reasonable doubt that the go-fast loaded with contraband the Coast Guard spotted, hailed, and partially disabled on June 12, 2006, was stateless.[4]  Accordingly, it is hereby

RECOMMENDED:

1.  Defendants' motion to dismiss (doc. 33) be DENIED.

IT IS SO REPORTED in Tampa, Florida on March 1, 2007.

*Mark A. Pizzo*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date it is served on the parties shall bar an aggrieved party from a de novo determination by the District Court of issues covered in the report, and shall bar the party from attaching on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice.  28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982)(*en banc*).

cc:   Hon. Elizabeth A. Kovachevich
      Counsel of Record

---

[4]  The *Tinoco* panel left open for debate the evidentiary standard to be applied for proving the MDLEA's jurisdictional requirement (preponderance of the evidence or proof beyond a reasonable doubt).  Irrespective, I find the government has satisfied the higher burden.